**In re ELECTRO–MET COAL COMPANY, INC., Debtor.**

**Bankruptcy No. 81–2486.
Motion No. 90–2604M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 5, 1990.

voided as a sanction for failure to obey an order of court.

The trustee argues that PNB had proper notice of the hearing and an opportunity to be heard and that the order of June 26, 1990 is not violative of constitutional due process. In addition, the trustee denies that said order was issued as a sanction for PNB's willful failure to comply with the order of May 8, 1990.

Enterprise Investments, Inc., a secured creditor and an administrative claimant in this bankruptcy case, further contends that PNB's motion is untimely in that it was submitted more than ten (10) days after the order of June 26, 1990 was issued and thus had become final and unappealable.

PNB's motion for reconsideration will be denied for reasons set forth below.

Sidney R. Finkel, Volk, Frankovitch, Anetakis, Recht, Robertson & Hellerstedt, Pittsburgh, Pa., Trustee.

Beverly Weiss Manne, Tucker Arensberg, P.C., Pittsburgh, Pa., for Pittsburgh Nat. Bank.

William E. Kelleher, Jr., Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Enterprise Investments.

David J. Laurent, Polito & Smock, P.C., Pittsburgh, Pa., for Consolidation Coal Co.

Stephen I. Goldring, Asst. U.S. Trustee, Pittsburgh, Pa.

Robert A. Galanter, Phillips & Galanter, P.C., Pittsburgh, Pa., for American States Ins. Co.

Mary McKeen Houghton, Asst. U.S. Atty., W.D. Pa., Pittsburgh, Pa., Bruce S. Gelber, Asst. Chief U.S. Dept. of Justice, Environment and Natural Resources Div., Environmental Enforcement Section, Washington, D.C., for the U.S.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a motion by Pittsburgh National Bank ("PNB") for reconsideration of an order issued by this court on June 26, 1990, declaring that PNB's lien on Debtor's property had been satisfied in full.

PNB alleges in its motion that the order is violative of procedural due process guaranteed by the United States Constitution in that it was not given reasonable prior notice that the court would determine the validity and/or the amount of its lien at that time and was not provided an opportunity to be heard on the matter. PNB alternatively alleges that the order in question was improperly issued as a sanction for its failure to abide by a previous order of May 8, 1990. Accordingly, PNB alleges a violation of the Bankruptcy Code which does not authorize the court to declare a lien

### I

### FACTS

This case has a long and torturous history wherein none of the parties have covered themselves with glory. Every step forward has been parried with two steps backward. The file contains the details and, accordingly, this Opinion will only cover the salient facts. This Opinion will not recite in detail this convoluted history.

On June 14, 1983, PNB filed a proof of claim in the amount of $219,709.91, plus interest and attorney's fees.

After a myriad of related and semi-related proceedings, a hearing was held on May 8, 1990, on motion by the trustee to sell estate realty known as Hutchinson Mine ("property") free and clear of all liens and encumbrances. PNB, allegedly the holder of the first lien on the property, was represented at the hearing by counsel, who objected on several grounds to the proposed sale of the property.

Questions were raised at that hearing (and several others held previously) concerning the validity and/or amount of PNB's lien on the property in light of the alleged payment of insurance proceeds to PNB as the loss-payee due to a fire at the property. As had been its wont throughout the history of this protracted bankrupt-

cy case, PNB failed to disclose on the record any information regarding this matter.[1]

The sale did not go forward on May 8, 1990 because it had not been properly advertised. However, the court did order PNB to disclose, at least ten (10) days prior to the subsequently scheduled sale, the amount of and the basis for its lien on the property. Aside from the open court mandate to counsel to PNB, no separate written order directing PNB to supply this information was issued by the court. Although the docket in this bankruptcy case does not reflect this oral order, curiously PNB does not dispute that it was issued or dispute its validity. Moreover, this order was not appealed by PNB and its validity and/or effect is not at issue.

The hearing on the proposed sale of the property was rescheduled for and held on June 26, 1990. A substantial portion of the courtroom was filled with parties interested in this sale. Although PNB had been duly notified of the time and place of the rescheduled hearing, it elected for reasons of its own not to attend the sale.

The court determined at the June 26, 1990 hearing that PNB had failed to provide the required information included in the May 8, 1990 Order regarding the amount of and the basis for its lien on the property. In fact, no information was offered, either ten (10) days prior thereto or at the hearing, relating to the claim and/or the payment of insurance proceeds.

Enterprise Investments, Inc., holder of the second lien on the property, then argued that the sale could not go forward as PNB had not provided the information necessary to the bidding process. As a result, Enterprise Investments thereupon moved for a determination by the court that PNB's lien had been paid in full.

The court was confronted at that point with at least two alternatives. It could again postpone the sale and schedule at some future date the question of PNB's

possible contempt and/or the amount of and basis for PNB's claim. Alternatively, the court could give PNB the benefit of the doubt and find that it had not violated the order but had not provided the information because the mysterious insurance proceeds had satisfied its lien in full. A further advantage of this latter approach was that the sale could take place as scheduled. In the interest of all concerned, the court chose the latter alternative and found that PNB's lien had been satisfied in full.[2]

To the surprise of all concerned, the initial one dollar ($1.00) bid was immediately bettered and spirited bidding ensued. Ultimately, sale of the property to Consolidation Coal Company for $102,000.00 was confirmed by the court at the hearing on June 26, 1990.

PNB was notified on July 19, 1990 by the trustee that the court had orally determined at the hearing on June 26, 1990 that its lien on the property had been satisfied in full. The transcript of the June 26, 1990 hearing was filed with the court and entered on the docket on September 18, 1990.

On September 27, 1990 (approximately ninety (90) days after the determination that PNB's lien had been satisfied in full and approximately seventy-five (75) days after PNB admits having knowledge of the order), PNB filed this motion for reconsideration.

II

ANALYSIS

A.) *Timeliness of Motion*

Enterprise Investments, Inc. objects to PNB's motion as untimely on the ground that it was filed more than ten (10) days after entry of the Order of June 26th and thus after said Order had become final and not appealable.

PNB claims that its motion is timely under Bankruptcy Rule 9023, which expressly

---

1. The mystery is further complicated by allegations that the premium paying for the policy in question was in fact paid by this estate.

2. The claim by PNB that the court had improperly *sanctioned* it for not providing the required information by declaring that its lien had been satisfied in full is simply incorrect.

incorporates FED.R.CIV.P. 59(e). According to PNB, since neither the docket nor the proceeding memo for the June 26th hearing expressly indicates that its lien had been voided, no order at all has yet been entered concerning the matter. In the alternative, PNB appears to argue that if an order has been entered, it was not entered until September 18, 1990, when the transcript of the hearing on June 26th was filed and entered on the docket.

Since it is determined below that the motion for reconsideration must be denied on the merits as PNB was provided notice and opportunity to be heard on June 26, 1990, it will not be necessary to address in detail the issue of timeliness. PNB's motion does, however, appear to be untimely. It had notice of and was aware of the hearing on June 26, 1990 and knew (or should have known) that the issue of the existence and/or the amount of its lien was of paramount importance to the sale of the property. PNB had previously blocked other sales and the absence of this information could probably further delay this sale. Most importantly, PNB admits in its motion that it became aware of the oral order issued on June 26, 1990 no later than July 19, 1990, when it was so informed by the trustee.

PNB's argument, if followed to its logical conclusion, would entail that an oral order, of which a party is aware but which had not been entered on a separate document and not recorded on the docket, would have no binding effect unless and until the proceeding at which the order was given had been transcribed and entered on the docket. Such a result would be unacceptable in that it would leave it to the discretion of the parties to determine whether (and when) the order became effective. Should the parties not request transcription of the proceeding, the order would (by PNB's reasoning) *never* become effective.[3] This flies in the face of reason, especially where (as in this court) all proceedings are recorded verbatim on tape and are available almost immediately for review.[4]

### B.) *Motion For Reconsideration*

A motion for reconsideration is not a vehicle for raising issues or citing authorities a party could or should have presented prior to the court's ruling. It is not a vehicle for rehashing arguments previously made or for refuting the court's prior ruling. *See Lelsz v. Kavanagh*, 112 F.R.D. 367, 371 (N.D.Tex.1986). A motion to reconsider is appropriate where the court has clearly misunderstood a party, has made a decision outside the issues presented by the parties, has made an error not of reasoning but apprehension, or where there has been a significant change in the law or the facts since the court's prior ruling. *See Above The Belt, Inc. v. Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983).

PNB's sole basis for reconsideration is that it was deprived of procedural due process in that it was not given prior notice and reasonable opportunity to be heard on the matter before the ruling by this court on June 26, 1990. This contention is without merit.

Procedural due process imposes constraints on governmental decisions which deprive a person of "liberty" or "property" within the meaning of the Due Process Clause of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The fundamental requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner". *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Consequently, some form of hearing is required before one may be finally deprived of a property interest. *Mathews*, 424 U.S. at 333, 96 S.Ct. at 902.

Unlike certain legal principles, however, due process is not a technical concept having a fixed content in relation to time,

---

**3.** It should be noted that PNB had ordered the transcript of the hearing on June 26, 1990, but never paid for it. As a result, the transcript was not provided to PNB.

**4.** PNB ordered a copy of the tape of this proceeding on October 25, 1990, paid the $5.00 cost, and said tape was delivered to them on October 26, 1990.

place and circumstances. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). It defies any notion of an invariant procedure which applies to every conceivable situation. The procedures required by due process may vary from situation to situation. *See Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 320, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985). Such flexibility is intended in part to permit alternative and varied means of dispute resolution. *Walters*, 473 U.S. at 326, 105 S.Ct. at 3192.

■ Due process does *not* require that "the procedures used to guard against an erroneous deprivation ... be so comprehensive as to preclude any possibility of error". *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979). Rather, due process in this instance requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information". *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The United States Constitution requires only a reasonable assessment of "the practicalities and peculiarities" of the situation. *Id.*

The circumstances surrounding this situation indicate that PNB's due process rights were *not* violated. PNB received formal notice of the hearing scheduled for June 26, 1990, at which the ruling presently under consideration was rendered.

In addition, the context in which PNB was directed by the court on May 8, 1990 to submit the amount and the basis of its lien on the property to be sold placed PNB on notice that failure to provide this information prior to the next sale would result in a determination *at the subsequent sale* that its lien would be deemed *at that time* to have been satisfied in full by the insurance proceeds paid to it.

During the proceeding on May 8th and at earlier proceedings, other interested parties had alleged that PNB had received insurance proceeds which conceivably had satisfied its first lien on the property. PNB had adamantly refused to indicate whether or not these allegations were true. For reasons about which the court can only speculate, PNB, through its counsel, seemed determined to hinder the trustee's efforts to sell the property.[5]

The purpose of the directive to PNB to provide the required information in advance of the next sale was to ensure that the sale of the property proceeded in an orderly manner the next time. If PNB, or any other lienholder, intended to bid on the property, the amount of PNB's first lien was to be disclosed. The court was convinced that this information was necessary, in light of the uncertainty surrounding PNB's first lien, if other lienholders intended to bid on the property. Specifically, the court stated at the hearing that if PNB intended to bid it would be authorized to bid the amount of its lien that was outstanding. If other lienholders intended to bid, they would bid subject to PNB's prior lien and would have to pay in the amount of that prior lien before bidding the amount of their own liens.

PNB was represented by competent counsel at the hearing on May 8, 1990. Counsel was present when the court directed PNB to provide the required information and should have been aware of the context in which the directive was made. Counsel neither requested clarification nor objected to the directive.

The court unequivocally intended on May 8th, when it directed PNB to provide this information, that failure on its part to do so would be deemed by the court as indicating that PNB's lien indeed had been satisfied in full out of the insurance proceeds.

Considering the experience of its counsel, PNB had ample reason to know from the

---

5. PNB, in an obvious attempt to convince this court of its contrition and/or cooperation, finally disclosed at the hearing on its motion for reconsideration on October 30, 1990, some four (4) months after the property had been sold, the amount of its lien that was outstanding after it had received the insurance proceeds. The figures and basis therefore would be subject to objection should the matter go forward.

circumstances that failure to provide the information as directed would result in a determination by the court at the subsequent sale that its lien on the property had been satisfied in full and had been extinguished. In short, PNB had adequate notice and a reasonable opportunity to be heard on this matter before the determination was made. PNB *elected* not to provide the information and not to attend the sale. It cannot now complain that it was deprived of due process.[6]

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 5th day of December, 1990, in accordance with the accompanying Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that the *Motion For Reconsideration* filed by Pittsburgh National Bank at the above-captioned motion number be and is hereby DENIED.

---

**6.** Although PNB has not offered to explain why it did not attend the sale on June 26, 1990, the reason is readily apparent. PNB did not attend the sale because it did not expect any money to be realized therefrom and obviously felt that it was not worthwhile for it to attend. Consolidation Coal Co., the ultimate purchaser of the property, had made an initial bid of one dollar ($1.00) at the sale scheduled for May 8, 1990. To PNB's undoubted surprise, the property was purchased by Consolidation Coal Co. for $102,-000.00. Lack of interest, not lack of due process, accounted for PNB's failure to appear at the sale on June 26, 1990.